# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

August 23, 2011


William J. Nicoll, Esq.
Jenkins, Block & Associates, P.C.
The Symphony Center, Suite 206
1040 Park Avenue
Baltimore, MD 21201

Alex S. Gordon, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

      Re:  Tobey Lynn Garner v. Michael J. Astrue, Commissioner,
           Social Security, Civil No. SKG-10-1930

Dear Counsel:

    Plaintiff, Tobey Lynn Garner, by her attorney, William J.
Nicoll and Jenkins, Block & Associates, P.C., filed this action
pursuant to 42 U.S.C. § 405(g) seeking judicial review of the
final decision of the Commissioner of the Social Security
Administration ("the Commissioner"), who denied her claim for
Disability Insurance Benefits ("DIB") and Supplemental Security
Income ("SSI") under sections 205(g) and 1631(c)(3) of the
Social Security Act ("the Act").

    This case has been referred to the undersigned magistrate

1

judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.  Currently pending before the Court are cross motions for summary judgment.  No hearing is necessary. Local Rule 105.6.  For the reasons that follow, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14) and GRANTS Defendant's Motion for Summary Judgment (ECF No. 18).

## I.    PROCEDURAL HISTORY

Plaintiff, Tobey Lynn Garner, originally filed for DIB under Title II of the Act, 42 U.S.C. § 401 et seq., and for SSI under Title XVI of the Act, 42 U.S.C. § 1381 et seq., on May 19, 2006, alleging disability commencing October 1, 2004.  (R. 94-106, 107-109).  The Social Security Administration ("SSA") denied Ms. Garner's applications at the initial and reconsideration levels.  (R. 60-64, 66-69).  A hearing was held on July 18, 2008 before Administrative Law Judge ("ALJ") Melvin D. Benitz, who on August 14, 2008 denied Ms. Garner's applications, determining that she was not disabled within the meaning of the Act.  (R. 8-19).  The Appeals Council denied Ms. Garner's request for review, making the ALJ's opinion the final decision of the agency.  (R. 1-4).  Ms. Garner now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).  (ECF No. 14).

## II.  FACTUAL BACKGROUND

The Court has reviewed the Commissioner's Statement of
Facts and, finding that it generally accurately represents the
record, hereby adopts it.  (ECF No. 17-2).  However, the
Statement of Facts does not mention the evaluation of Dr.
Garretson who treated claimant from October 9, 2006 to July 11,
2008 (R. 353-361).  Dr. Garretson diagnosed claimant with
fibromyalgia as well as other conditions.  He estimated
claimant's functional limitation if in a competitive work
situation as "slight to moderate."  (R. 356).  He opined that
claimant would need a job which includes periods of
walking/stretching during an eight hour day and would permit
shifting at will and found some weightlifting restrictions.  (R.
357).  Finally, he did say that claimant "needs a functional
capacity evaluation by PT to determine her limitations and/or
work potential."  (R. 360).[1]

## III. ALJ FINDINGS

In reviewing a claimant's eligibility for DIB and SSI, an
ALJ must consider all of the evidence in the record and follow
the sequential five-step analysis set forth in the regulations

---

[1] The ALJ did not discuss this medical evidence which he arguably should
have done.  However, this is harmless error, if error at all, since
the evidence is consistent with other evidence in the record, which
the ALJ adopted.

to determine whether the claimant is disabled as defined by the
Act. 20 C.F.R § 416.920(a)(2011). Disability is defined in the
Act as the "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
has lasted or can be expected to last for a continuous period of
not less than 12 months." 42 U.S.C. § 416(i)(1)(A)(2011). If
the agency can make a disability determination at any point in
the sequential analysis, it does not review the claim further.
20 C.F.R. § 404.1520(a)(4)(2011). After proceeding through each
of the required steps, the ALJ in this case concluded that Ms.
Garner was not disabled as defined by the Act. (R. 19).

At the first step of the sequential analysis, the claimant
must prove that she is not engaged in "substantial gainful
activity."[2] 20 C.F.R. § 416.920(a)(4)(i)(2011). If the ALJ
finds that the claimant is engaged in "substantial gainful
activity," she will not be considered disabled. Id. Applying
20 C.F.R. 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971
et seq., the ALJ determined that Ms. Garner "has not engaged in

---

2  Substantial gainful activity is defined as "work activity that is both
substantial and gainful." 20 C.F.R. § 416.972 (2011). Work activity is
substantial if it involves doing significant physical or mental activities
and even if it is part time or if plaintiff is doing less, being paid less,
or has fewer responsibilities than when she worked before. 20 C.F.R. §
416.972(b) (2011). Substantial gainful activity does not include activities
such as household tasks, taking care of oneself, social programs, or therapy.
20 C.F.R. § 416.972(c) (2011).

substantial gainful activity since October 1, 2004, the alleged
onset date of disability." (R. 10).

At the second step of the sequential analysis, the ALJ must
determine whether the claimant has a severe, medically
determinable impairment or a combination of impairments that
limit her ability to perform basic work activities. 20 C.F.R.
§§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521,
416.921(2011). Here, the ALJ found that Ms. Garner has two
severe impairments: Degenerative Disc Disease and Depression (20
CFR 404.1520(b) and 416.920(c)). (R. 10). The ALJ also
determined that Ms. Garner suffered from mild obesity, an
impairment that is not considered severe for the purpose of the
regulations because it does not impose more than a minimal
effect on her ability to function. (Id.)

At step three, the ALJ considers whether the claimant's
impairments, either individually or in combination, meet or
equal an impairment enumerated in the "Listing of Impairments"
in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing" or "LOI").
20 C.F.R. § 416.920(a)(4)(iii)(2011). Here, the ALJ found that
although Ms. Garner had the aforementioned severe impairments,
she did not have an impairment or combination of impairments
that met or medically equaled a listing impairment. (R. 11).
In determining whether Ms. Garner's depression met the criteria

5

of listing 12.04, the ALJ considered whether the "paragraph B" criteria were satisfied. (Id.). To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction on daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. §§ 404.1520 and 416.920. A marked limitation means more than moderate but less than extreme. Id. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or on average of once every 4 months, each lasting for at least two weeks. Id. With respect to activities of daily living, the ALJ found that Ms. Garner only has a mild limitation. (R. 11). The ALJ noted that Ms. Garner performs some household chores, possesses a driver's license, and drove herself to her psychological evaluation in September 2006. (Id.) With respect to social functioning, the ALJ found that Ms. Garner has moderate difficulties. (Id.). The ALJ noted that Ms. Garner has melancholic moods, rarely leaves the house, and that she claimed to have only one friend outside of her own family. (Id.). With regard to concentration, persistence or pace, the ALJ found that Ms. Garner has moderate difficulties due to depression. (Id.). The

6

ALJ noted that the psychologist who examined Ms. Garner for the State agency opined that her depression "at times causes moderate impairment as to sustained concentration and persistence." (Id.). The ALJ concluded that because Ms. Garner's mental impairment does not cause at least two "marked" limitations, or one "marked" limitation and repeated episodes of decompensation, the "paragraph B" criteria were not satisfied. (Id.).

Before an ALJ advances to the fourth step of the sequential analysis, he must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(e) (2011). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184(Jul. 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545. In considering the claimant's symptoms, the ALJ must follow a two-step process in which he must first determine whether there is an underlying medically determinable physical or mental impairment(s). Id. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do work activities. Id. For this

purpose, whenever statements about intensity, persistence, or
functionally limiting effects of pain or other symptoms are not
substantiated by objective medical evidence, the ALJ must
evaluate the credibility of the statements based on a
consideration of the entire case record. Id.

Here, the ALJ determined that Ms. Garner had the RFC to
perform unskilled sedentary work. (R. 15). In reaching this
RFC, the ALJ determined that Ms. Garner's medically determinable
impairments "could reasonably be expected to produce the alleged
symptoms; however her statements concerning the intensity,
persistence, and limiting effects of these symptoms are not
wholly credible." (R. 16). The ALJ rejected the responses on
an Assessment of Ability to Do Work-Related Activities (Mental)
completed by Ms. Garner's treating physician, Dr. Khan, on July
11, 2008. (R. 15-16). The ALJ observed that Dr. Khan's
responses portrayed Ms. Garner as unable to "handle work-related
activities, make personal and social adjustments, or perform
physical functions." (R. 14). The ALJ opined that Dr. Khan's
responses were so extreme that it would be impossible to imagine
Ms. Garner performing her activities of daily living, such as
cooking, dusting, or driving herself to appointments. (R. 15-
16). The ALJ also found that Dr. Khan's responses were
inconsistent with the other medical opinion evidence in the

record. (R. 16). The ALJ gave "specific attention" to the
report of August 29, 2006, by Dr. William Barrish, who examined
the claimant and reported that the claimant has the residual
functional capacity to perform unskilled sedentary work on a
sustained basis. (Id.). While Dr. Barrish's responses varied
considerably from those of Dr. Khan, each agreed that outside
forces such as financial worries and family relationships were
the basis of the claimant's depression. (Id.). Dr. Barrish
assessed that the claimant could sit for six to eight hours with
position changes, lift five pounds frequently and 10 pounds
occasionally, and that her depression and anxiety were "fairly
well controlled" with her medications. (Id.). Dr. Barrish
stated that Ms. Garner's pain medication might preclude her from
a high level of "cognitive functioning," but did not preclude
her from the performance of unskilled sedentary work. (Id.).
The ALJ found the opinion of Dr. Barrish credible and
persuasive, and rejected the findings of Dr. Khan as extreme.
(Id.).

At the fourth step of the sequential analysis, the ALJ must
consider whether the claimant retains the RFC necessary to
perform past relevant work.[3] 20 C.F.R. §§ 404.1520(e),

---

3 The regulations state that "impairment(s) and any related symptoms, such as
pain, may cause physical and mental limitations that affect what [one] can do

416.920(e)(2011).  The ALJ noted that Ms. Garner's past work as

a customer service representative, bartender, nursing assistant,

and sales person involved more than sedentary, unskilled tasks.

(R. 26).  Thus, the ALJ found that Ms. Garner would be unable to

return to past relevant work.  (Id.).

    If the claimant is unable to resume her past relevant work,

the ALJ proceeds to the fifth and final step of the sequential

analysis.  This step requires consideration of whether, in light

of vocational factors such as age, education, work experience,

and RFC, the claimant is capable of other work in the national

economy.  20 C.F.R. §§ 404.1520(g), 416.920(g) (2011).  At this

step, the burden of proof shifts to the agency.  The agency must

establish that the claimant retains the RFC to engage in an

alternative job that exists within the national economy.  McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v.

Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  Specifically,

the agency must prove both the claimant's capacity to perform

the job and that the job is available.  Grant v. Schweiker, 699

F.2d 189, 191 (4th Cir. 1983).  In addition, the agency must

show that she possesses skills that are transferable to those

alternative positions or that no such transferable skills are

_____

in a work setting . . . residual functional capacity is the most [one] can
still do despite [those] limitations."  20 C.F.R. § 404.1545(2011).

necessary.  McLain, 715 F.2d at 869.

Here, The ALJ noted that Ms. Garner was 37 years old, a
"younger individual" according to the regulations, possessed a
ninth grade education, and was able to communicate in English.
(R. 17).  However, the ALJ determined that Ms. Garner did not
possess job skills that would be transferable to other work
within her RFC.  (Id.).  Nevertheless, the ALJ determined that,
"considering [Ms. Garner's] age, education, work experience, and
residual functional capacity, there are jobs that exist in
significant numbers in the national economy that the [she] can
perform."  (Id.).  The ALJ concluded that Ms. Garner had not
been under a disability, as defined in the Act, from the alleged
onset date of October 1, 2004 through the date of his decision,
and recorded a finding of "not disabled."  (R. 18) (citing 20
C.F.R. §§ 404.1520(g), 416.920(g)(2011)).

## IV.  STANDARD OF REVIEW

The function of this Court on review is to leave the
findings of fact to the agency and to determine upon the whole
record whether the agency's decision is supported by substantial
evidence, not to try plaintiff's claim de novo.  King v.
Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must
uphold the Commissioner's decision if it is supported by
substantial evidence and if the ALJ employed the proper legal

11

standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).  However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  Coffman, 829 F.2d at 517.  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding

the case for a rehearing." Melkoyan v. Sullivan, 501 U.S. 89,

98 (1991).

## V.  DISCUSSION

The issue before the Court is whether substantial evidence

in the record supports the ALJ's determination that Ms. Garner

is not disabled.  Ms. Garner presents three arguments on appeal.

First, Ms. Garner asserts that the ALJ's hypothetical question

to the Vocational Expert ("VE") did not include all the evidence

in the medical file, and, as a result, the ALJ improperly relied

on the VE's response.  (ECF No. 14-5).  Second, Ms. Garner

contends that the ALJ improperly relied on the VE's testimony

because the VE did not adhere to the limitations presented in

the hypothetical.  (ECF No. 14-6).  Third, Ms. Garner contends

that the sit-stand option described in the ALJ's hypothetical

would result in a significant erosion of the sedentary work

base.  (ECF No. 14-7).  After careful evaluation of the ALJ's

opinion and the record as a whole, the Court finds that: (1) the

ALJ presented a proper hypothetical question; (2) the VE's

testimony properly adhered to the limitations presented in the

ALJ's hypothetical; and (3) the ALJ properly concluded that the

sit-stand option would not result in a significant erosion of

the sedentary work base in accordance with Social Security

Ruling 96-9p.  Accordingly, the Court upholds the decision of

13

the Commissioner.

**A.  THE ALJ POSED A PROPER HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT**

An ALJ must base his hypotheticals "upon a consideration of all relevant evidence of record on the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993).  The ALJ has "great latitude" in formulating hypothetical questions, and is free to accept or reject restrictions to the hypothetical proposed by claimant's counsel, even if these considerations are more restrictive than those originally suggested by the ALJ. Id.  Ultimately, the ALJ need only pose those hypothetical questions that are based on substantial evidence contained in the record and accurately reflect the claimant's limitations. France v. Apfel, 87 F. Supp. 2d 484, 490 (2000) (internal citations omitted).

**i.  The ALJ's Hypothetical Question is Supported by Substantial Evidence in the Record**

During the hearing in this matter, the ALJ described the hypothetical person as suffering from "degenerative disc disease and depression which cause her to have moderate pain and discomfort and depression leading to mood swings, somewhat relieved by her medications, however, without significant side effects, but she derives drowsiness from one or a combination." (R. 46).  The ALJ added that the individual would be "mildly to

14

moderately limited in her ability to perform to interact socially and to maintain concentration, persistence and pace." (Id.). The ALJ stated that this individual would need to have "simple, routine, unskilled jobs, low stress, low concentration, low memory and that the individual would be able to do simple task." (Id.). The ALJ also stated that the individual must avoid heights, hazardous machinery, temperature and humidity extremes, vibration, ladders, scaffolds, and stairs, and that the individual could only perform jobs that allowed "her to avoid contact with the public, co-workers or supervisors." (R. 47). With respect to the hypothetical individual's physical limitations, the ALJ said that the person could lift ten pounds occasionally and five pounds frequently, and could sit for thirty minutes and stand for ten minutes consistently on an alternating basis. (R. 47).

Ms. Garner contends that there is no evidence in the record to support the ALJ's characterization of her impairments in social functioning and maintaining concentration as "mild to moderate." (ECF No. 14-5). However, substantial evidence supports the ALJ's description of the claimant's limitations in social functioning and maintaining concentration as "mild to moderate." Notably, Dr. Nachand opined that the claimant's depression would only "at times" cause a moderate impairment in

her ability to sustain concentration and social interaction.
(R. 212-215). Dr. Nachand also opined that Ms. Garner had no
appearance of thought disorder and only a minimal impairment in
her capacity for understanding. (Id.). In addition to Dr.
Nachand's medical opinion, Dr. Khan stated in his treatment
notes that Ms. Garner's judgment, attention and concentration
were "good." (R. 293, 295, 297). Dr. Khan also described Ms.
Garner's anxiety as being "under control," and noted that her
thought flow was logical, sequential, and goal directed. (R.
291, 293). Considered together, these statements suggest that
Ms. Garner suffered only a "mild" limitation in maintaining
concentration and social interaction. By contrast, Dr. Sokas
and Dr. Payne opined that she had moderate limitations in social
functioning and the ability to concentrate. (R.212, 244).
Additionally, Dr. Garretson's findings and conclusions, inter
alia, only "slight – moderate" functional limitation in
competitive work situation were supportive of the ALJ's
conclusion. Given these opinions, substantial evidence supports
the ALJ's descriptive conclusion of "mild to moderate."

   ii.   **The ALJ Properly Considered All of the Medical Opinion
         Evidence in the Record.**

     Ms. Garner argues that the ALJ's hypothetical was improper
because the ALJ rejected the functional capacity questionnaire

completed by her treating psychiatrist, Dr. Khan, on July 11, 2008. (ECF No. 14-5).

The opinion of a treating physician regarding the nature and severity of a claimant's impairment(s) may warrant special consideration in that it reflects expert judgment based on continuing observation over a long period of time. Coffman, 829 F.2d at 517. Accordingly, a treating physician's opinion is typically afforded greater weight than a non-treating physician's opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Nevertheless, the Fourth Circuit does not require that a treating physician's testimony "be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). While 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) both provide that a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Generally, such opinions are given more weight the more the

medical source presents relevant evidence to support it and the better the source explains the opinion. See 20 C.F.R. § 404.1527(d)(3) (1998). In addition, the more consistent the opinion is with the record as a whole, the more weight the court will give that opinion. See 20 C.F.R. § 404.1527(d)(4) (1998).

Even if a treating source opinion does not merit "controlling weight," it is entitled to deference and should be weighed according to the factors promulgated by the Commissioner in the regulations. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). The SSA has clarified that,

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996).

The ALJ must evaluate a treating physician opinion found not to be controlling "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the

18

applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist," Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(1)-(5) (2011)).  Other relevant factors may include a medical source's level of understanding of the SSA's disability programs and related evidentiary requirements as well as the source's familiarity with other information in a claimant's case record.  20 C.F.R. § 404.1527(d)(6)(2011).

In the instant case, substantial evidence supports the ALJ's finding that Dr. Khan's medical opinion testimony is unreliable because it is inconsistent with, and unsupported by, other evidence contained in the record.  For example, Dr. Khan opined that Ms. Garner had poor to no ability to understand, sustain concentration, or carry out job instructions.  (R. 363). However, as the ALJ noted, Dr. Khan's testimony contradicts the Ms. Garner's statements regarding her regularly performed daily activities (i.e., keeping appointments, driving, shopping, cooking, etc.).  (R. 15-16).  With respect to the treatment relationship between Dr. Khan and the claimant, the ALJ noted that there were no records of visitation after January 2007, and that the claimant ceased going to mental health therapy.  (Id.). The ALJ also noted that the responses provided by Dr. Khan were

inconsistent with the other medical opinions contained in the record.  (Id.).  For instance, Dr. Barrish opined that the claimant could sit for six to eight hours with occasional position changes, and that Ms. Garner's depression and anxiety were "fairly well controlled" with medication.  (R. 210).

In addition, Dr. Khan's responses to the functional capacity form completed on July 11, 2008 contradicted notes from Dr. Nachand, Dr. Sokas, and Dr. Khan himself.  Dr. Nachand opined that Ms. Garner had no more than a "minimal impairment in her capacity for understanding and memory," and only moderate a limitation in sustained concentration and social interaction. (R. 212).  Dr. Sokas opined that Ms. Garner had only a moderate limitation in her ability to maintain social functioning, concentration, persistence and pace.  (R. 244).  In his treatment notes, Dr. Khan repeatedly indicated that Ms. Garner's judgment and ability to maintain concentration were "good" or "fair," and that her thought flow was logical, sequential, and goal oriented.  (R. 291, 293).  For the foregoing reasons, the ALJ properly excluded the more severe limitations of Dr. Khan from his hypothetical.

**B.  THE ALJ PROPERLY RELIED ON THE VOCATIONAL EXPERT'S TESTIMONY**

At the hearing below, the ALJ asked the VE whether there are jobs in the national economy for an individual with Ms. Garner's

limitation to sedentary work. (R. 47). In response, the VE listed four jobs that exist in significant number throughout the national economy and within a 75-mile radius of the claimant's hometown: sedentary unskilled office helper, sedentary unskilled stocker, sedentary unskilled document preparer, and sedentary unskilled sorter. (R. 47-48). According to the VE's testimony, these positions in total account for over 500,000 jobs nationally and over 1,100 jobs locally. (Id.).

Ms. Garner argues that because the VE listed two jobs – sedentary unskilled stocker and sedentary unskilled office helper – that are not defined in the Dictionary of Occupational Titles ("DOT") as "sedentary," the ALJ's reliance on the VE's testimony was improper. This argument is without merit for two reasons. First, Ms. Garner simply ignores that these are only two of the four occupations given by the VE in response to the ALJ's hypothetical question. The other two jobs listed by the VE, sedentary unskilled document preparer and sedentary unskilled sorter, account for 600 jobs locally and over 195,000 nationally. These two jobs alone satisfied the Commissioner's burden to demonstrate that jobs exist in significant number throughout the national economy. Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (holding that as few as 110 jobs locally may constitute a significant number of jobs).

Second, SSR 00-04p provides that an ALJ may rely on a VE's conflicting testimony, so long as the ALJ specifies a reasonable basis doing so. For guidance, SSR 00-04p provides an exemplary list of reasonable bases, including the following applicable example:

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. SSR 00-04p. A VE . . . or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

In the instant case, the ALJ specified that any appropriate job must allow the claimant to "sit and/or stand for 10 minutes" in order to alternate her position. (R. 47). The VE explained that the two jobs at issue here, stocker and office helper, were sedentary and unskilled versions of the respective occupation, each including a "sit-stand option." (R.47-48). The ALJ also asked the VE whether these two jobs were consistent with the DOT. (Id.). The VE responded, "No," but then proceeded to explain that reason for the incongruence between her testimony and the DOT was that the DOT lacked any mention of the sit-stand option that the claimant required. (Id.). The VE added that her responses were consistent with the ALJ's hypothetical question, and that she based her responses on her experience and

knowledge of these jobs' respective requirements.  (<u>Id.</u>).

## C.  THE ALJ PROPERLY CONSIDERED WHETHER THERE WERE A SUFFICIENT NUMBER OF SEDENTARTY JOBS THAT THE CLAIMANT COULD PERFORM

Finally, Ms. Garner contends that the ALJ failed to consider the significant erosion of the sedentary base that would occur for a claimant who needs to alternate between sitting and standing throughout the day.  (ECF No. 14-7).  For support, Ms. Garner cites Rule 96-9p for the statement that "a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly." (<u>Id.</u>).  However, Rule 96-9p also provides:

> If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.

Accordingly, the mere determination that the claimant requires a sit-stand option does not require that the ALJ find the claimant disabled.  Rule 96-9p only requires that the ALJ consider whether there is work in the economy for the claimant despite her limitations.  The ALJ did just that.  In posing his hypothetical to the VE, the ALJ directed the VE to limit her testimony to those occupations that contain a sit-stand option. (R. 46-47).  In response, the VE provided only occupations that

contained a sit-stand option.  (R. 47-48).  Therefore, the ALJ's

ruling is consistent with Rule 96-9p, and Ms. Garner's argument

is without merit.

## VI. CONCLUSION

Having found the ALJ's analysis to be supported by

substantial evidence at each of the five steps of the sequential

evaluation process, the Court hereby DENIES Plaintiff's Motion

for Summary Judgment or, in the alternative, Motion for Remand

(ECF No. 12), and GRANTS Defendant's Motion for Summary Judgment

(ECF No. 22).

Despite the informal nature of this letter, it shall

constitute an Order of the Court, and the Clerk is directed to

docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge
